**Paulette GADLIN, as personal representative; Gwendolyn Hairston; William Hairston; Jerome Hairston; Jacqueline Smith; and Bernell Riccatone, Plaintiffs–Appellants,**

v.

**METREX RESEARCH CORPORATION, a Wisconsin corporation, Defendant–Appellee.**

No. 02CA0313.

Colorado Court of Appeals, Div. V.

May 22, 2003.

Rehearing Denied July 10, 2003.

---

Zodrow et al., P.C., John J. Zodrow, Denver, Colorado, for Plaintiffs–Appellants.

Patton Boggs, L.L.P., Carolyn L. McIntosh, Lorrie A. Bade, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this wrongful death action, plaintiffs, Paulette Gadlin, Gwendolyn Hairston, William Hairston, Jerome Hairston, Jacqueline Smith, and Bernell Riccatone, appeal the summary judgment in favor of defendant, Metrex Research Corporation. We reverse and remand.

According to the complaint, on November 10 and 11, 1995, Bertha Hairston and Robert Riccatone died from pyrogenic shock occasioned by injection of endotoxin-contaminated solutions occurring at a local hospital. Plaintiffs, the surviving children of Hairston and the surviving spouse of Riccatone, allege the cause of death was bacterial contamination of a detergent solution called MetriZyme, used to soak and clean medicine cups.

In May 1997, one of the plaintiffs' attorneys, James Scherer, received a product label from the hospital indicating that Metrex Research Corporation, with offices in Parker, Colorado, had manufactured MetriZyme. According to Scherer's affidavit, he contacted the Colorado Secretary of State's office and was informed that Metrex was a suspended corporation with its principal place of business in Wisconsin.

On August 27, 1997, Scherer sent a letter directed to the president of Metrex at an address in Orange, California, listed in the Colorado Secretary of State's records. The letter asserted, inter alia, that Metrex was responsible for the decedents' deaths.

Scherer asserts that in response to this letter, Stephen Tomassi, who identified himself as in-house counsel for Sybron International Corporation, contacted him. According to Scherer, Tomassi stated that Sybron had purchased the assets of Metrex in February 1995. Scherer asserts that he and Tomassi entered into settlement negotiations, which proved unsuccessful.

On October 29, 1997, approximately two weeks before the applicable statute of limitations would have expired, plaintiffs initiated an action against Sybron in the United States District Court for the District of Colorado (federal action), asserting that Sybron had manufactured the allegedly defective MetriZyme solution. Sybron filed a motion to dismiss, asserting that it was not the manufacturer of MetriZyme; rather, Metrex Research Corporation had manufactured the product.

Discovery in the federal action revealed that, in early 1995, Metrex Research Corporation (Metrex I) had agreed to sell its assets to Sybron. To accomplish that sale, Sybron incorporated a new Wisconsin corporation named Metrex Acquisition Corporation (MAC). MAC issued its stock to Sybron Dental Specialties, Inc., a subsidiary of Sybron. MAC then purchased the assets of Metrex I and changed its name to Metrex Research Corporation (Metrex II). Metrex I then changed its name to Strice, Ltd.

In April 1998, plaintiffs amended their complaint in the federal action to add Metrex

II as a party. The court thereafter granted a motion to dismiss filed by Metrex II, holding that Metrex II was a Colorado resident for federal diversity purposes and the court thus lacked subject matter jurisdiction. It also ruled in the alternative that the amended complaint adding Metrex II as a party had not been filed within the applicable statute of limitations and the amendment did not relate back to the original filing date of the complaint under Fed.R.Civ.P. 15(c).

On appeal, the Tenth Circuit Court of Appeals affirmed that part of the judgment determining that the court lacked subject matter jurisdiction, but it vacated the judgment and remanded the action with directions to dismiss on that basis only. That court did not address the merits of the relation back issue.

Following the dismissal of the federal action, plaintiffs initiated the present action against Metrex II in state district court under the remedial revival statute, § 13–80–111, C.R.S.2002. That statute allows a new action to be filed in a state court within ninety days following dismissal in a federal proceeding when the dismissal occurs because of lack of jurisdiction. The state action, like the federal one, asserted claims based on strict liability, breach of implied warranty, and negligence.

Metrex II moved to dismiss, asserting that the amendment adding it as a party in the federal action had been filed after the statute of limitations had run and did not relate back under Fed.R.Civ.P. 15(c) or C.R.C.P. 15(c). Metrex II asserted that plaintiffs had made a tactical decision to name Sybron in the federal action to ensure diversity of citizenship so that they could pursue their claim in federal court.

Because affidavits were presented in support of and in opposition to the motion, the trial court treated the motion as one for summary judgment. Finding that the amended complaint filed in the federal action did not relate back to the date of the original filing, the court granted the motion. It stated that there was "no genuine issue of material fact with respect to the question of whether the Plaintiffs made a mistake concerning the identity of Metrex."

This appeal followed.

## I.

Plaintiffs contend the trial court erroneously granted summary judgment because there are genuine issues of material fact as to whether the amendment adding Metrex II as a defendant relates back to the filing of the original complaint. Specifically, plaintiffs contend there are issues of fact whether they made a mistake concerning the identity of Metrex II as the proper party. We agree.

We review a summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

Summary judgment is a drastic remedy and is warranted only upon a clear showing that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if it will affect the outcome of the case. *Dominguez Reservoir Corp. v. Feil*, 854 P.2d 791 (Colo.1993); *White v. Farmers Insurance Exchange*, 946 P.2d 598 (Colo. App.1997).

The burden is on the party moving for summary judgment to establish the lack of a genuine issue of fact. Any doubts in this regard must be resolved against the moving party. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, supra.*

A party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

■ We consider the parties' arguments under Fed.R.Civ.P. 15(c) rather than under C.R.C.P. 15(c), although the result would likely be the same under either rule. *See Watson v. Unipress, Inc.*, 733 F.2d 1386 (10th Cir.1984); *Dillingham v. Greeley Publishing Co.*, 701 P.2d 27 (Colo.1985); *Defelice v. Johnson*, 931 P.2d 548 (Colo.App.1996). Because the amendment adding Metrex II as a defendant must relate back to the date of the original complaint in the federal action for this state court proceeding under the remedial statute to be timely, Fed.R.Civ.P. 15(c) is the applicable standard. *See Watson v. Unipress, Inc., supra* (applying Fed.

R.Civ.P. 15(c) in diversity action regarding Colorado statute of limitations).

■ When, as here, an amendment seeks to change the party being sued, the amended pleading will relate back to the date of the original pleading only if all of the conditions in Fed.R.Civ.P. 15(c) have been met. *Archuleta v. Duffy's Inc.*, 471 F.2d 33 (10th Cir.1973); *Henry v. F.D.I.C.*, 168 F.R.D. 55 (D.Kan.1996). That rule establishes the following four requirements:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986); *Brezovski v. United States Postal Service*, 905 F.2d 334 (10th Cir.1990). The third requirement, a mistake concerning identity of the proper party, is at issue here.

■ Fed.R.Civ.P. 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. However, the rule was not intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential defendant who has not been served, nor was it intended to permit a plaintiff to engage in piecemeal litigation. *See Kilkenny v. Arco Marine Inc.*, 800 F.2d 853 (9th Cir.1986).

■ A plaintiff's tactical decision to pursue a particular defendant in lieu of another, with full knowledge of all potential defendants, does not constitute a "mistake" within the meaning of Fed.R.Civ.P. 15(c)(3)(B). *Loveall v. Employer Health Services, Inc.*, 196 F.R.D. 399 (D.Kan.2000); *see also Miller v. Calvin*, 647 F.Supp. 199 (D.Colo.1985). However, an assertion that the plaintiff did not know the true facts concerning the manufacturer of an allegedly defective product may qualify as a mistake. *See Anderson v. Deere & Co.*, 852 F.2d 1244 (10th Cir.1988).

■ Here, the court granted summary judgment based on its conclusion that plaintiffs knew the identity of Metrex before filing the federal action and that the erroneous naming of Sybron as the defendant therefore could not have been due to mistake. However, we conclude there are genuine issues of fact that preclude summary judgment on this issue.

The attorneys for the parties submitted conflicting affidavits. Scherer's affidavit avers he was informed that Metrex was a suspended corporation, and when he attempted to reach Metrex with a letter to its president regarding its potential liability, Tomassi responded. Scherer asserts that Tomassi identified himself as in-house counsel for Sybron and stated that Sybron had bought all of Metrex's assets. Scherer avers that Tomassi engaged in settlement discussions as in-house counsel for Sybron, and that it was only after the statute of limitations had expired that Tomassi asserted that Metrex had separate existence and that Metrex was the only proper defendant.

In contrast, Tomassi's affidavit denies that he identified himself as in-house counsel for Sybron, and denies that he told Scherer that Sybron had purchased Metrex's assets. Tomassi also states he specifically asked Scherer whether he would be serving Metrex with a complaint, and Scherer responded that he would be serving Sybron.

Thus, these issues are disputed, and because their resolution affects the outcome of the case, they are material.

It is undisputed, as the trial court noted, that plaintiffs' counsel knew of the involvement of "Metrex" in the manufacture of MetriZyme. Specifically, the court noted the 1997 letter from Scherer to Metrex, the label on the MetriZyme product containing Metrex's name as the manufacturer and its address in Parker, Scherer's affidavit establishing that plaintiffs were aware of the identity of Metrex, and public documents showing Metrex II was a corporation in good standing in Colorado.

However, under Fed.R.Civ.P. 15(c), the issue is whether there was a mistake concerning the "identity of the *proper* party" to sue,

not whether plaintiffs merely knew about that party. *See Henry v. F.D.I.C., supra* (one can only mistakenly identify a known party); *but see Loveall v. Employer Health Services, Inc., supra* (manufacturer of defective product could be added as party after expiration of statute of limitations through relation back even though plaintiff did not know of its initial involvement). In our view, the trial court confused counsel's knowledge of the "identity" of Metrex, that is, who it was, with counsel's knowledge that it was the proper party to be sued, that is, whether Metrex still existed as a separate corporate entity and had actually manufactured the MetriZyme at the relevant time.

None of the cited evidence conclusively establishes that plaintiffs knew that Metrex II was the proper party to sue, but instead chose to sue Sybron for tactical reasons. For example, while plaintiffs' counsel knew that Metrex had corporate existence at some point in time (as evidenced by his August 1997 letter to Metrex's president), it is not established whether he knew there were two different corporate entities, both named Metrex Research Corporation (Metrex I and Metrex II). Assuming Scherer's affidavit to be true, it is possible that upon learning that Sybron had bought the assets of Metrex I, Scherer believed Metrex had ceased to have corporate existence and was unaware that Metrex II was the entity that then owned those assets. Indeed, Scherer's affidavit avers that at the time the complaint was filed in the federal action, he believed that Sybron was the proper defendant in the case as the manufacturer of MetriZyme. Hence, granting all favorable inferences to plaintiffs, as we must, we conclude that Scherer may have mistakenly believed Sybron had manufactured the MetriZyme product starting sometime after February 1995.

Metrex argues that the only reason plaintiffs did not sue it was to maintain diversity jurisdiction in the federal action. However, while this inference could be drawn from some of the facts, the standard of review requires that all inferences be drawn in plaintiffs' favor, not in favor of Metrex.

Further, there is an inference from Scherer's affidavit that Metrex, through Tomassi, induced plaintiffs to think that Sybron was the proper party to sue. "If the originally named defendant or the party sought to be added either knowingly allows plaintiff to think he has sued the proper party or actually misleads him as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute of limitations defense." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1500 (2d ed.1990); *see Travelers Indemnity Co. v. United States,* 382 F.2d 103 (10th Cir.1967). Whether Tomassi led plaintiffs to believe that Sybron was the proper party to sue remains a factual question.

Metrex nevertheless asserts that the evidence regarding its identity and location is overwhelming and undisputed. It points out that Scherer actually sent the letter to Metrex in August 1997 regarding plaintiffs' claims, that the letter asserts Metrex's liability, and that it notes Metrex manufactured the MetriZyme. Plaintiffs also had a label from the product giving Metrex's name, address, and telephone number. In addition, public records show most, if not all, of the corporate transition of Metrex I to Metrex II, that Metrex was listed in five Denver area telephone directories, and that it had an office with numerous employees located in Parker.

However, while this information bears upon the credibility of some of Scherer's assertions, it does not conclusively rebut the disputed issues of fact concerning the identity of the proper party to sue.

Accordingly, the summary judgment cannot stand.

## II.

■ Plaintiffs assert that the remaining requirements under Fed.R.Civ.P. 15(c) have been met, and they request us to hold as a matter of law that the amended complaint relates back to the original filing of the complaint. Metrex asserts that it will be prejudiced if forced to defend on the merits and that plaintiffs cannot demonstrate compliance with the remaining requirements of Fed. R.Civ.P. 15(c). We decline to address these issues at this stage of the proceedings.

First, we have not held that plaintiffs in fact made a mistake concerning the identity

of the proper party. That remains for the trial court to determine on remand after resolving the disputed facts. *See McCurry v. Allen*, 688 F.2d 581 (8th Cir.1982)(requirements of Rule 15(c) raise factual issues not susceptible of determination at the appellate level).

Second, some of the remaining issues also will require factual determinations, and there appear to be at least some factual disputes concerning these matters. For example, Metrex may have had knowledge of the asserted mistake through Tomassi, if he was acting as counsel for both Sybron and Metrex. Because Metrex and Sybron were related entities, at least to some extent, the knowledge of Sybron might be imputed to Metrex. However, whether Metrex knew that it should have been sued remains a factual question unexplored by the trial court.

For these reasons, and because the trial court did not address any of these issues or the remaining issues under Fed.R.Civ.P. 15(c), we decline to address them. *See Berndt v. Tennessee*, 796 F.2d 879 (6th Cir.1986)(determination of Fed.R.Civ.P. 15(c) matters should be made by the trial court in the first instance; whether new defendants knew or should have known that the suit should have been brought against them but for a mistake is a factual inquiry).

On remand, the trial court should resolve these issues before trial by holding an evidentiary hearing in which it should make credibility and factual determinations on the disputed matters under Fed.R.Civ.P. 15(c). *See Berndt v. Tennessee, supra; Wayne–Juntunen Fertilizer Co. v. Lassonde*, 456 N.W.2d 519 (N.D.1990); *see also Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993)(trial court acts as fact finder in determining motion to dismiss under C.R.C.P. 12(b)(1) and should hold evidentiary hearing before trial to determine notice issue under governmental immunity act).

The judgment is reversed, and the case is remanded for further proceedings in accordance with the views expressed herein.

Judge TAUBMAN and Judge NIETO concur.